ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| VÍCTOR RAMÍREZ TIRADO<br><br>Parte Apelada<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, en representación del Departamento de Obras Públicas y ARTURO DELIZ VÉLEZ, Director Interino<br><br>Parte Apelante | KLAN202400455 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: SJ2023CV11489<br><br>Sobre: Entredicho Provisional e *Injunction* |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Rodríguez Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de agosto de 2024.

Comparece el Gobierno de Puerto Rico, representado por la Oficina del Procurador General, y solicita que revoquemos la *Sentencia* emitida el 6 de febrero de 2024, notificada el 7 de febrero de 2024, por el Tribunal de Primera Instancia (TPI), Sala de Aguadilla. Mediante el referido dictamen, el foro primario expidió una orden de interdicto provisional contra el Departamento de Transportación y Obras Públicas (DTOP). En consecuencia, ordenó al DTOP levantar el cierre de la estación de inspección operada por el Sr. Víctor Ramírez Tirado (Sr. Ramírez Tirado), y reestablecer el acceso de la estación al programa E-Marban y venta de marbetes a través del Departamento de Hacienda, hasta tanto el DTOP celebre la vista administrativa dispuesta por reglamento para los casos en que se suspende la autorización a una estación de inspección.

Número Identificador
SEN2024_____

Evaluado el recurso presentado, así como el alegato en oposición de la parte apelada, Sr. Ramírez Tirado, revocamos el dictamen apelado.

**I.**

El 12 de diciembre de 2023, el Sr. Ramírez Tirado presentó una *Demanda* de entredicho provisional e *injunction* contra el DTOP. En síntesis, alegó que opera una estación oficial de inspección de vehículos, permiso número EOI-AG-0092, ubicada en Rincón, Puerto Rico (en adelante, Centro de Inspección). Adujo que, el 27 de junio de 2023, la compañía Cartek Caribe acudió al Centro de Inspección para realizar una actualización del sistema de inspecciones, pero la misma no se pudo completar debido a una interrupción del servicio de energía eléctrica. El Sr. Ramírez Tirado expresó que se comunicó con la compañía al otro día, pues no tenía acceso a las cámaras para poder preparar las órdenes de servicio. Cartek Caribe le informó que enviaría un técnico al día siguiente.

El Sr. Ramírez Tirado expuso en su demanda que, ante la falta de acceso al programa E-Marban, el 30 de junio de 2023, generó una llamada telefónica al DTOP, y dicha agencia –sin mediar explicación y sin notificarle sobre querella alguna– le informó que le había desactivado el acceso al programa E-Marban por motivo de una máquina de inspección inactiva. El Sr. Ramírez Tirado alegó que solicitó, sin éxito, reunirse con personal del DTOP para que le explicara la razón por la cual le desactivaron el acceso al sistema E-Marban.

Según las alegaciones, el 17 de julio de 2023, el DTOP notificó al Sr. Ramírez Tirado una carta sobre *Investigación de Querellas Recibidas*[1], en la que se le informó que, durante la visita realizada semanas antes por un Investigador de Querellas del Centro de

---

[1] Véase, Apéndice de Apelación, págs. 11-28.

Servicios al Conductor (CESCO), éste había encontrado que "su máquina estaba inactiva y [aun así] estaban vendiendo marbetes con certificados de inspección de su EOI", por lo que podría estar en violación al Artículo 12.07(e) de la Ley Núm. 22 del 7 de enero de 2000, conocida como *Ley de Vehículos y Tránsito de Puerto Rico,* 9 LPRA § 5001, *et seq.* En la referida carta, el DTOP citó al Sr. Ramírez Tirado para que al día siguiente compareciera a las oficinas del CESCO para una reunión informal con el fin de concluir la investigación y emitir una determinación final sobre la querella. Además, en la misiva, el DTOP indicó al Sr. Ramírez Tirado que, mientras concluía la investigación, el Centro de Inspección no estaba autorizado para operar. Por último, la comunicación advirtió al Sr. Ramírez Tirado sobre su derecho de solicitar la revisión de la decisión.[2]

El Sr. Ramírez Tirado continuó explicando en su demanda que en la reunión informal refutó todos los señalamientos que el DTOP le hizo y que, luego de dicha reunión, el DTOP le notificó otras cartas con nuevos señalamientos de irregularidades. Indicó que, el 4 de agosto de 2023, solicitó la revisión de todas las cartas cursadas hasta ese entonces por el DTOP y que se señalara la fecha para la celebración de una vista administrativa. Sin embargo, la agencia nunca le respondió ni pautó una fecha para la celebración de la vista.

El Sr. Ramírez Tirado reclamó que, desde el 30 de junio de 2023, el Centro de Inspección ha permanecido cerrado sin que se hubiera celebrado una vista administrativa ante el DTOP, lo cual resultaba contrario al deber ministerial impuesto por reglamento a la agencia de conceder el derecho a una vista en cualquier caso en el que se suspenda la autorización conferida a una estación de

---

[2] El 4 de agosto de 2023, el Sr. Ramírez Tirado solicitó la revisión de las cartas notificadas. Véase, Acápite 15 de la demanda, Apéndice del recurso, página 56.

inspección por un término mayor a treinta (30) días. Añadió que, la inobservancia de la agencia con los deberes impuestos por su reglamento violentaba su derecho a un debido proceso de ley, sin que la agencia hubiera tomado medidas para mitigar los daños que le ocasionó el cierre del Centro de Inspección. Señaló que lo anterior lo obligó a recurrir al foro judicial como único remedio disponible para vindicar sus derechos.

De tal forma, el Sr. Ramírez Tirado solicitó al foro primario que expidiera el interdicto provisional, ordenando al DTOP a levantar el cierre de la estación de inspección y a reanudar el acceso al programa E-Marban, así como la venta de marbetes a través del Departamento Hacienda. También requirió que dichos accesos se mantuvieran vigentes hasta tanto el DTOP celebrara la vista administrativa y la decisión que en su día emitiera la agencia fuera final y firme.

El foro primario señaló la vista de interdicto para el 24 de enero de 2024, mediante videoconferencia, y concedió al DTOP hasta el 23 de enero de 2024 para exponer su posición por escrito.

En cumplimiento con lo anterior, el 23 de enero de 2024, el Gobierno de Puerto Rico, por sí y en representación del DTOP, presentó ante el TPI una *Moción en Solicitud de Desestimación.*[3] En primer lugar, el DTOP alegó que el foro judicial carecía de jurisdicción para atender el asunto, debido a que todo lo concerniente a la concesión y autorización para operar una estación de inspección de vehículos ha sido delegado, por mandato legislativo, al DTOP. En segundo lugar, y sin renunciar al planteamiento de falta de jurisdicción, el DTOP alegó que, de conformidad con el Art. 678 del Código de Enjuiciamiento Civil, no se puede conceder una orden de interdicto provisional para impedir

---

[3] Véase, Apéndice del recurso, págs. 76-91.

la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico o el cumplimiento de cualquier actuación autorizada por ley. Añadió que, tampoco procedía la expedición del *injunction* debido a que las alegaciones del Sr. Ramírez Tirado no satisfacían los requisitos necesarios para la expedición del recurso extraordinario, puesto que éste no había establecido la existencia de un daño, mucho menos irreparable y, además, cuenta con un remedio adecuado en ley para dilucidar sus reclamos.

Por ello, el DTOP sostuvo que el Sr. Ramírez Tirado había presentado la solicitud de interdicto como un subterfugio para eludir agotar el trámite administrativo. Sobre el particular, la agencia resaltó la existencia de un trámite activo y pendiente ante su consideración, y que cualquier reclamo que el Sr. Ramírez Tirado tuviera una vez concluido dicho trámite, debía presentarse ante este tribunal intermedio, por ser el foro con jurisdicción para revisar las determinaciones administrativas. El DTOP también resaltó que, conforme a nuestro ordenamiento jurídico, cuando una agencia incumple con su obligación de adjudicar un caso dentro del término provisto en la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017 (LPAU), el único remedio es la presentación de un recurso judicial de *mandamus* ante este Tribunal de Apelaciones. En virtud de lo anterior, el DTOP solicitó la desestimación de la demanda de interdicto, con perjuicio.

Por su parte, el Sr. Ramírez Tirado presentó *Oposición a Desestimación[4],* en la que alegó que el cierre del Centro de Inspección por más de siete meses le causó daños irreparables. Detalló que dichos daños eran económicos, pues tenía que continuar pagando el arrendamiento del local, utilidades, salarios, entre otros. También alegó que sus clientes habituales habían

---

[4] Véase, Apéndice del recurso, págs. 92-97.

tenido que recurrir a otros centros de inspección, afectándose negativamente su negocio y plusvalía. A su vez, argumentó que el cierre sin justificación de la estación de inspección ha dañado la imagen de su negocio. Por último, arguyó que la tardanza de la agencia en celebrar la vista administrativa lo coloca en un estado de indefensión impreciso, sujeto a que se celebre la vista y se adjudique el asunto.

La vista de interdicto preliminar se celebró el 25 de enero de 2024. En ella, las partes informaron que el DTOP señalaría la vista administrativa solicitada por el Sr. Ramírez Tirado para una fecha cercana. Las partes presentaron sus argumentos y el caso quedó sometido para adjudicación.

El 7 de febrero de 2024, el TPI emitió la sentencia apelada. En ésta, resolvió que el Sr. Ramírez Tirado carecía de un remedio adecuado en ley para dilucidar su reclamo ante la dilación excesiva del DTOP en señalar la vista administrativa, razón por la cual asimismo resultaba inútil requerirle agotar el referido trámite administrativo. Añadió que mantener la estación de inspección cerrada por tanto tiempo sin habérsele conferido un debido proceso de ley ocasionó daños irreparables al Sr. Ramírez Tirado, colocándolo en un estado de indefensión.

En virtud de lo anterior, el TPI expidió una orden de interdicto provisional, mediante la cual exigió al DTOP levantar el cierre del Centro de Inspección EOI-AG-0092, y reanudarle el acceso al programa E-Marban y la venta de marbetes a través del Departamento de Hacienda. Requirió, además, que ambos servicios se mantuvieran vigentes hasta tanto el DTOP celebrara las vistas administrativas, emitiera su determinación y ésta adviniera final y firme. Por último, apercibió que el incumplimiento de cualquiera de las partes con la orden emitida podría ser causa para encontrarla incursa en desacato.

Inconforme, el DTOP presentó *Moción en Solicitud de Reconsideración.*[5] En esta reprodujo los argumentos presentados en su solicitud de desestimación, a saber, que el foro de instancia carecía de jurisdicción sobre la materia, que el Sr. Ramírez Tirado no había agotado el trámite administrativo ante el DTOP y que, ante un incumplimiento de una agencia en adjudicar un caso dentro del término provisto en la LPAU, el remedio judicial disponible ante este foro apelativo era el *mandamus.*

El Sr. Ramírez Tirado presentó su *Oposición a Moción en Solicitud de Reconsideración.* En síntesis, alegó que el DTOP no controvirtió los hechos alegados en la demanda; y que al igual que el *mandamus,* también el *injunction* es uno de los recursos disponibles que tiene una parte que alega incumplimiento de los deberes ministeriales de una agencia. Añadió que la controversia del caso cumplía con las excepciones establecidas en la Sección 4.3 de la LPAU que permiten relevar a una parte del agotamiento de los remedios administrativos ante la agencia. Por ello, solicitó que se denegara la solicitud de reconsideración y se mantuviera vigente la orden de interdicto provisional.

El 8 de marzo de 2024 y notificada en esa misma fecha, el TPI emitió *Resolución,* en la que declaró no ha lugar la solicitud de reconsideración presentada por DTOP por los fundamentos expresados en la oposición del Sr. Ramírez Tirado.[6]

Insatisfecho, el 7 de mayo de 2024, el Gobierno de Puerto Rico acudió ante este foro apelativo y formuló el siguiente señalamiento de error:

> Erró el Tribunal de Primera Instancia al emitir un entredicho provisional a favor de la parte apelada a pesar de que el DTOP es quien ostenta jurisdicción en primera instancia para atender la controversia y se no (sic) cumplen con los requisitos para su emisión.

---

[5] Véase, Apéndice del recurso, págs. 11-28.
[6] Apéndice del recurso, pág. 53.

El 7 de junio de 2024, el Sr. Ramírez Tirado presentó su *Alegato en Oposición a Apelación.* Evaluados los argumentos de las partes, resolvemos.

**II.**

**A.**

La Regla 57 de Procedimiento Civil, 32 LPRA Ap. V, R. 57, y los Arts. 675 y 687 del Código de Enjuiciamiento Civil, 32 LPRA secs. 3521 *et seq.,* son las disposiciones de ley que regulan en nuestro ordenamiento el recurso de *injunction.*

El Art. 675 del Código de Enjuiciamiento Civil define el *injunction* como "un mandamiento judicial expedido por escrito, bajo el sello de un tribunal, por el que se requiere a una persona para que se abstenga de hacer, o de permitir que se haga por otras bajo su intervención, determinada cosa que infrinja o perjudique el derecho de otra". 32 LPRA sec. 3521. Este recurso fue adoptado del sistema de equidad inglés y se utiliza principalmente en casos donde no existe otro remedio adecuado en ley.[7]

Existen tres modalidades de *injunction,* a decir: el entredicho provisional; el *injunction* preliminar; y el *injunction* permanente. 32 LPRA Ap. V, R. 57.

El *injunction* preliminar es un remedio provisional que persigue mantener el *status quo* hasta que se celebre el juicio en sus méritos, con el fin de que la conducta del demandado no convierta en académica la sentencia que finalmente se dicte o que se le ocasione al peticionario un daño de mayor consideración mientras se dilucida el litigio.[8]

El *injunction* preliminar va dirigido a requerir o prohibir hacer determinado acto, con el objetivo de impedir que se causen perjuicios inminentes o menoscabos irreparables a alguna persona

---

[7] *Next Step Medical v. Bromedicon et al.,* 190 DPR 474, 486 (2014).
[8] *Íd.,* pág. 486.

durante la pendencia del pleito. Por lo tanto, el factor cardinal que gobierna la expedición de este remedio extraordinario es la existencia de una amenaza real de sufrir algún menoscabo para el cual no existe un remedio adecuado en ley.[9]

Al decidir si expide una orden de entredicho provisional o *injunction* preliminar, el tribunal deberá considerar: (1) la naturaleza de los daños que puedan ocasionársele a las partes de concederse o negarse el recurso; (2) la irreparabilidad del daño o la existencia de un remedio adecuado en ley;[10] (3) la probabilidad de que eventualmente la parte promovente prevalezca al resolverse el litigio en su fondo; (4) la probabilidad de que la causa se torne en académica de no concederse el *injunction*; y (5) el posible impacto sobre el interés público del remedio que se solicita. También, la Regla 57.3 de Procedimiento Civil, 32 LPRA Ap. V, Regla 57.3, enumera los factores que el tribunal debe considerar al decidir si concede o no la petición del recurso. Además de los factores enumerados, la regla añade el criterio de diligencia y la buena fe con que ha obrado la parte peticionaria.[11]

Por su parte, en cuanto al interdicto o *injunction* permanente, después del juicio en sus méritos y antes de ordenar un *injunction* permanente, el tribunal debe considerar, nuevamente, la existencia o ausencia de algún otro remedio adecuado en ley.[12] Los factores que se deben tomar en consideración para emitir el recurso de *injunction* permanente son si el demandante ha prevalecido en un juicio en sus méritos; si posee algún remedio adecuado en ley; el interés público envuelto; y el balance de equidades.[13]

---

[9] *Íd.*

[10] Es preciso aclarar que el concepto del "daño irreparable" en el contexto del *injunction* se refiere a "aquél que no puede ser apreciado con certeza ni debidamente compensado por cualquier indemnización que pudiera recobrarse en un pleito", o a "aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles". *Misión Ind. PR v. JP y AAA*, 142 DPR 656, 681 (1998).

[11] *Next Step Medical v. Bromedicon et al.*, supra, pág. 487.

[12] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008).

[13] *Íd.*

Tanto los requisitos promulgados por la jurisprudencia, como los enumerados en las Reglas de Procedimiento Civil, no son absolutos, sino directrices que dirigen al tribunal al momento de decidir si la evidencia presentada justifica la expedición del recurso. La concesión del remedio descansará en la sana discreción judicial, que se ejercerá al considerar tanto los intereses como las necesidades de las partes involucradas en el caso. Éste debe expedirse únicamente ante una demostración clara e inequívoca violación de un derecho. Por ello, la determinación del tribunal no se revocará en apelación, a menos que se demuestre que el foro abusó de su facultad.[14]

De otra parte, el Art. 678 del Código de Enjuiciamiento Civil, 32 LPRA sec. 3524, dispone las instancias en las que no podrá otorgarse un *injunction* ni una orden de entredicho. Así pues, el mencionado artículo en su inciso (3) prohíbe la concesión del remedio de *injunction* para impedir la aplicación u observancia de cualquier ley de la Asamblea Legislativa de Puerto Rico, de un funcionario público, de una corporación pública, o de una agencia pública o de cualquier empleado o funcionario de dicha corporación o agencia, a menos que se hubiera determinado por sentencia final y firme e inapelable e irrevisable que dicha ley o actuación autorizada por ley es inconstitucional o inválida.

**B.**

La revisión judicial está sujeta a ciertos límites de naturaleza prudencial y estatutaria. En específico, al amparo de la doctrina de agotamiento de remedios administrativos, una parte que desea obtener un remedio en una agencia debe utilizar todos los medios administrativos disponibles antes de acudir a un tribunal.[15] Ello implica que la revisión judicial no está disponible hasta tanto la

---

[14] *Next Step Medical v. Bromedicon et al.,* supra, pág. 487.
[15] *AAA v. UIA,* 200 DPR 903, 913 (2018).

parte afectada haya utilizado todos los procedimientos correctivos ofrecidos por el procedimiento administrativo.[16]

La doctrina de agotamiento de remedios administrativos cumple varios objetivos, tales como permitir que la agencia desarrolle un historial completo del asunto ante su consideración, asegurar que la agencia pueda adoptar las medidas correspondientes de conformidad con la política pública formulada por una entidad, y evitar los disloques causados por las intervenciones inoportunas de los tribunales en distintas etapas interlocutorias. En otro extremo, facilita la revisión judicial, porque asegura que los tribunales tengan información más precisa sobre el asunto en controversia y les permite tomar una decisión más informada. También, promueve una distribución más eficiente de tareas entre los poderes ejecutivo y judicial.[17]

No obstante, existen varios factores que operan a favor de preterir la doctrina de agotamiento de remedios. Éstos son: (1) cuando dar curso a la acción administrativa cause un daño inminente, material y sustancial, no teórico o especulativo; (2) cuando el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado, (3) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o (4) cuando el asunto es estrictamente de derecho.[18]

Una mera alegación de violación a derechos constitucionales o la ineficacia de los remedios administrativos no justifica eludir el proceso administrativo.[19] El solicitante que pretenda desviarse del trámite administrativo alegando violación a un derecho

---

[16] *Íd.* Véase, además, lo resuelto en *Rivera v. ELA*, 121 DPR 582, 597 (1988). En dicha ocasión el Tribunal Supremo determinó que procede la desestimación del caso judicial ante la aplicación de la doctrina de remedios administrativos.

[17] *Íd.,* pág. 914.

[18] *ORIL v. El Farmer, Inc.,* 204 DPR 229, 240 (2020).

[19] *Acevedo v. Mun. de Aguadilla,* 153 DPR, 788, 806-807 (2001).

constitucional tiene la obligación de demostrar que el agravio al referido derecho es de tan grave y patente intensidad, que se justifica eludir el cauce administrativo.[20]

El Tribunal Supremo ha sido enfático al aclarar que "para preterir el requisito de agotamiento "[n]o basta con que los remedios administrativos sean lentos", sino que también deben constituir "una gestión inútil e inefectiva o que produzcan un daño irreparable".[21] Además, es necesario, que quien recurre al foro judicial alegando que debe prescindirse del requisito de agotamiento de remedios administrativos, señale hechos específicos y bien definidos de manera tal que el tribunal pueda evaluar su petición.[22]

### C.

En nuestro ordenamiento jurídico es norma conocida que las agencias administrativas están obligadas a observar estrictamente sus propios reglamentos.[23] Además, según ha establecido el Tribunal Supremo, "una vez se ha adoptado una norma, la agencia administrativa, debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la forjaron".[24]

El *Reglamento para reglamentar la inspección de vehículos de motor, la certificación de estaciones oficiales y personal,* Reglamento Núm. 6271, aprobado el 2 de enero de 2001, aplicable a los hechos del caso, establece en su Artículo XII (Vista Administrativa), inciso (1) que "[e]n todos los casos en que el Secretario suspenda por un término mayor de treinta (30) días o revoque la autorización a una

---

[20] *Guzmán y otros v. E.L.A.*, 156 DPR 693, 714 nota 19 (2002), citando a *Delgado Rodríguez v. Nazario de Ferrer,* 121 DPR 347, 357 (1988).

[21] *S.L.G. Flores-Jiménez v. Colberg,* 173 DPR 843, 852 (2008), citando a *Guadalupe v. Saldaña, Pres U.P.R.,* 133 DPR 42, 50 (1993).

[22] *Guadalupe v. Saldaña, Pres U.P.R.,* supra, pág. 50.

[23] *Rivera Padilla v. OAT,* 189 DPR 315 (2013); *García Cabán v. U.P.R.*, 120 DPR 167, 175 (1987).

[24] *Unlimited v. Mun. de Guaynabo,* 183 DPR 947, 981 nota 87 (2011), citando a *Centro Unido Detallistas v. J.P.,* 172 DPR 601, 614 (2007).

estación de inspección a un mecánico procederá a otorgar el derecho a vista administrativa".

El Reglamento Número 6271 quedó anulado con la aprobación del *Reglamento para estaciones oficiales de inspección, inspección de vehículos de motor y otros fines relacionados,* Reglamento Núm. 9526 de 27 de diciembre de 2023. Las disposiciones aplicables al derecho a la concesión de una vista administrativa se desglosan en el Artículo VII, sección (O) (Vista Administrativa) del nuevo reglamento. Esta también reconoce el derecho a una vista administrativa en los casos en que se suspenda o revoque la autorización a una estación de inspección.

**D.**

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que un demandado en una demanda, reconvención, demanda contra coparte, o demanda contra tercero, solicite al tribunal la desestimación de las alegaciones en su contra antes de contestarla cuando es evidente de las alegaciones de la demanda que alguna de las defensas afirmativas prosperará.[25] A tales efectos, la referida regla lee, en lo pertinente, como sigue:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
> (2) falta de jurisdicción sobre la persona;
> (3) insuficiencia del emplazamiento;
> (4) insuficiencia del diligenciamiento del emplazamiento;
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
> (6) dejar de acumular una parte indispensable.

Por consiguiente, para disponer de una moción de desestimación por el fundamento de que la demanda no expone una

---

[25] *Costas Elena y otros v. Magic Sport y otros*, 213 DPR ___ (2024), 2024 TSPR 13; *Eagle Security v. Efrón Dorado et al.,* 211 DPR 70, 83 (2023); *Conde Cruz v. Resto Rodríguez*, 205 DPR 1043 (2020).

reclamación que justifique la concesión de un remedio, los tribunales vienen obligados a tomar como ciertos todos los hechos bien alegados en la demanda y considerarlos de la manera más favorable a la parte demandante.[26] La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación.[27]

Por lo tanto, es necesario considerar si, a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de este, la demanda es suficiente para constituir una reclamación válida.[28] Tampoco procede la desestimación de una demanda, si la misma es susceptible de ser enmendada.[29]

Ahora bien, una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, obliga al demandante que se opone a establecer por qué la reclamación que presentó es del tipo que justifica un remedio legal.[30]

**III.**

En su único señalamiento de error, el Gobierno de Puerto Rico consigna que el TPI erró al emitir el interdicto provisional a favor del Sr. Ramírez Tirado a pesar de carecer de jurisdicción y porque la acción instada deja de exponer una reclamación que justifique la concesión de un remedio. Ello debido a que el Artículo 678 del Código de Enjuiciamiento Civil, *supra,* veda la expedición de un interdicto para poner en vigor una legislación o reglamentación válida y porque el Sr. Ramírez Tirado no estableció los requisitos

---

[26] *Eagle Security v. Efrón Dorado et al.,* supra, pág. 84; *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015); *Colón Rivera et al. v. ELA,* 189 DPR 1033, 1049 (2013).

[27] *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 423 (2012); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994).

[28] *Eagle Security v. Efrón Dorado et al.,* supra; *Pressure Vessels PR v. Empire Gas PR,* supra, pág. 505.

[29] *Colón v. Lotería,* 167 DPR 625, 649 (2006).

[30] *Conde Cruz v. Resto Rodríguez,* supra.

necesarios para la expedición del recurso extraordinario. Igualmente, el Gobierno de Puerto Rico indicó que los daños alegados por el Sr. Ramírez Tirado son exclusivamente económicos y, por tanto, resarcibles mediante otro remedio adecuado en ley.

Por su parte, el Sr. Ramírez Tirado señala que la tardanza de la agencia en celebrar la vista administrativa y los daños económicos que ello representa para su negocio cumplen con el requisito esencial de daño irreparable que el tribunal consideró antes de expedir el recurso extraordinario de *injunction.*

Según discutido, el recurso de *injunction* no es el procedimiento adecuado para impedir la aplicación de una ley o reglamentación válida a menos que se hubiera determinado por sentencia final, firme e inapelable e irreversible que dicha ley o actuación autorizada por ley es inconstitucional o inválida. Por tanto, presumida la validez de la reglamentación del DTOP, no procede el *injunction* ante la ausencia de una sentencia final y firme que haya dispuesto que la actuación de la agencia es inválida.

El DTOP ya ha iniciado el proceso administrativo, el cual se rige por el reglamento citado. El Sr. Ramírez Tirado fue notificado de que existe una querella y una investigación administrativa que podría resultar en la revocación del permiso para operar el Centro de Inspección. Conforme al reglamento, el procedimiento administrativo se rige por las disposiciones de vistas, adjudicaciones y reconsideraciones establecidas en la LPAU.

Al aplicar la doctrina de agotamiento de remedios administrativos, resulta inescapable concluir que el foro con la pericia y el conocimiento especializado para dirimir la controversia en primera instancia es el DTOP y no el tribunal. Una vez concluya el trámite administrativo, la parte adversamente afectada por la decisión de la agencia podría recurrir en revisión judicial ante este

Tribunal de Apelaciones, por ser foro con jurisdicción para revisar las decisiones administrativas de los entes administrativos.

Aun cuando el Sr. Ramírez Tirado se ampara en su derecho a un debido proceso de ley en su vertiente procesal, ello no justifica la preterición del cauce administrativo que está obligado a seguir ante el DTOP. Si el Sr. Ramírez Tirado entiende que la agencia ha incumplido su obligación de adjudicar el caso dentro del término provisto en la LPAU, tiene disponible como remedio presentar un recurso de *mandamus.*

Añadimos una consideración adicional. La demanda incoada por el Sr. Ramírez Tirado no cumple con los criterios requeridos para la concesión del recurso extraordinario de *injunction.*

Conforme a la normativa jurídica citada, para determinar si procede la expedición de un *injunction* el tribunal deberá evaluar la naturaleza de los daños que pueden ocasionársele a la parte promovente de concederse o denegarse el mismo, su irreparabilidad o la existencia de un remedio adecuado en ley y, finalmente, la probabilidad de que dicha parte promovente prevalezca en los méritos. De las alegaciones de la demanda se colige que los daños que el Sr. Ramírez Tirado reclama son estrictamente económicos. Este señala que la dilación del proceso administrativo ante el DTOP ha imposibilitado que el Centro de Inspección opere, con las consecuentes pérdidas monetarias que ello conlleva. Tales daños alegados no son irreparables, pues el Sr. Ramírez Tirado tiene disponible un procedimiento administrativo ante el DTOP para hacer valer su reclamo. El Sr. Ramírez Tirado falló en establecer la naturaleza irreparable de los daños requerido para demostrar la procedencia del recurso extraordinario de *injunction.*

En resumen, el remedio extraordinario de *injunction* no constituye el mecanismo procesal adecuado en ley para lograr que se restablezcan las operaciones de una estación oficial de

inspección, sino que al Sr. Ramírez Tirado le corresponde agotar el remedio administrativo provisto por reglamento correspondiente. En otras palabras, existen remedios adecuados en ley para vindicar los derechos que le asisten.

Por lo tanto, a la luz de que el Sr. Ramírez Tirado cuenta con un remedio adecuado en ley que hace inmeritoria la concesión del remedio extraordinario del *injunction*, corresponde ordenar la desestimación de su causa de acción.

**IV.**

Por los fundamentos expuestos, revocamos la sentencia apelada. En consecuencia, este Tribunal ordena la desestimación de la demanda instada el 12 de diciembre de 2023 por el Sr. Víctor Ramírez Tirado.

**Notifíquese.**

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones